Next case for argument this morning is Yang v. Lynch. Mr. Skalmowski. May I please report? Hold on just a minute while the court clears. Okay. Okay. May it please the court, Armin Skalmowski for Petitioner Yang. In this case, your honors, the immigration judge and the agency throw everything, the kitchen sink, the used car, whatever you want to call it, against Petitioner just to paint him as not credible. To put this case in perspective, you have a person coming from China with the highest level of education being middle school. He has to recall events from 5 to 11 years prior to his hearing. He's on the stand for 3 plus hours. The wife is there to testify on his behalf. She's on the stand for about an hour, hour and a half. So you've got a four and a half hour hearing where you have the agency, the judge, hammering this person for small details on a case that's pretty simple. The simple facts are the following. The wife had two forced abortions, one in 2002, one in 2006. After the 2006 forced abortion, she was too weak for sterilization. So the government said, the Chinese government said to Petitioner, we're going to sterilize you. Those are the facts. He flees to the United States. He files his case for asylum based on past persecution and a well-funded future persecution. Those are the facts. What was his past persecution in his case? Well, in this case, there was a resistance. In his case, I would say, Judge, it was a resistance to the one-child policy family planning situation where he had to endure months or days or years of pressure from the government regarding the one-child policy. Also, his wife underwent two forced abortions, and he tried to resist as much as he could. It wasn't physical, but it was in a lot of different ways. So we find that as the past persecution. But the bigger one is the well-funded fear because they are going to sterilize him if he goes back to China. That's what he's afraid of. Well, put it in sequence. First of all, they had one child who turned out to be, after three or four years old, some kind of disabled himself. Yes. And in China, apparently, parents want a son for the future. They think that's who's going to take care of him when they get old. Correct. Anyway, they did want to have another baby. Now, they didn't go ask permission first. Isn't that correct? She even got pregnant. That is correct. They didn't ask for permission. That is correct. And so the employer, as I understand it, that she was threatened to lose her job if she didn't have an abortion. That is correct. And so she, I'll say, reluctantly went along with that. Correct. Now, the second one is the one I want to hear about. The second one, 2006, they discover that she's pregnant. The government tries to convince her to get the abortion because there was no permission given for the second child. And that was one of the issues, too. They said, well, the judge said, you know, it doesn't make sense. First, you say that, you know, when asked the question, could you get a second child, petitioner didn't know. So he was found to be not credible based on that reason alone. But he didn't know because it can change any moment. But at the time, that is true. The wife then was forced to get the abortion. And then they focused on him because she was too weak to get the sterilization. So they tell him, you will get the sterilization. From that point on, he realizes he has to leave China. And he does so by 2007. The second abortion. The second abortion, correct. This is the one where she fell down the stairs. Correct. That was at the home. Correct. When they're getting out of the house? Yes. Okay. She fell down the stairs and broke an arm. Correct. And I wasn't quite clear. Was she unconscious? No, they, they, it doesn't, apparently wasn't. She, she ends up, I believe, they tell her, you know, I'm not mistaken. I don't believe she's unconscious, but she did break her arm. And then she gets, she's in the hospital. For the broken arm? I believe so. That was the fracture that they talk about. That's the medical document that he submitted on the record. And she testified of that. Yeah, but isn't that, isn't that occasion when she got aborted? That's, that's true. And then she woke up without the baby or something? Something like that, yes. Well, you don't say it like that. You're the guy that knows this case. And I'm really perplexed. But that's, that's what happened, Judge. Yes, that's correct. Well, let's make it clear, because it seems that the judge didn't believe that. Right, because what happened was they, they focused on the issue of the statements, too. The biggest part of the, the credibility issue was that the statements were different. 2008 statement and 2011 statement. There was also an issue of, there was also an issue of the cooperation. I mean, she was there to testify in person as to what happened. And the judge just didn't believe her. And she submitted documents of the, the, the bone fracture and the broken nerve. She was in the hospital for three months. That is correct. So, so the part of the thing was the judge said, well, you, your medical document didn't mention anything about the abortion. Also, she said, she testified that, well, I had, like, high blood pressure. I had heart problems. And then she said, well, why, the IJ said, well, why didn't you mention, why doesn't the document mention anything about high blood pressure or, you know, heart problems? And why isn't the abortion mentioned in the document? All it talks about is a bone fracture and broken nerve. So that's, that's all she had. Besides, she was also there in person to testify. So that, so basically the, the judge did not believe the petitioner's testimony, didn't believe her testimony, didn't believe her documents were sufficient or as to what the judge thought would have been sufficient for a medical document from China based on what she experienced. Well, of course, as you would argue, documents are pretty hard to get in China. And that's the thing. I mean, the judge basically at the end of almost an hour of questioning, she, you can see that the wife is tired. And the judge keeps on asking her, well, why isn't the heart problem mentioned on your document? Why isn't this problem? Why isn't that problem? Who paid for your medical records? Who paid for your medical exam? And she's like, you know what, I don't remember everything. I have some memorization issues. I have brain problems. I'm sorry. All of this is going on with translation, right? The translation I think is not really an issue. Well, it isn't an issue except that's what was going on, right? Well, there's a translator. They're going back and forth. Correct. Chinese and English, I presume. Mandarin and English. Correct, Judge. But I mean, so the IJ basically discounts the wife because she had to find some reason, discounts the wife and says, well, she has a problem with memorization. She's got brain issues. You know, she's testifying not credibly. That's why I want to be clear. What your side is, is that she is not credible for what occurred. The impression I get from the briefs is she was unconscious. Did this abortion occur? Yes, the abortion occurred. While she was not conscious? While she was not conscious, correct. Correct. I mean, that seems pretty incredible. Either you believe it or you don't. But, I mean, it's under any circumstance it would be hard to believe except that's apparently what happened. Now, I wonder what they say. But this is very, for someone who denied credibility for not remembering the details of what occurred and then she was in the hospital for three months. There must have been something beyond. Well, Judge, they also focus on the statements. I mean, they say that the statements were different. They actually spend more time on the fact that he didn't mention in his first statement that he was, that the authorities were visiting his house and visiting him about the sterilization. Yeah, it's all about him. She's there. Right. And we don't even know what her status is. My time, Your Honor. Counsel. Went back with a heavy book. Good morning. Good morning. May it please the Court. Steven Nwedjo appearing on behalf of the Attorney General. Substantial evidence supports the agency's finding that Mr. Yang failed to establish his eligibility for asylum because his testimony wasn't credible and he failed to corroborate his claim. As this Court has recognized, the REAL ID Act instituted a highly permissive standard for adverse credibility determinations. Such determinations are therefore viewed under a highly deferential standard and will be upset only under extraordinary circumstances. Why don't you tell me what you know based on the record of the second abortion? Yes, Your Honor. Obviously, given the test... I mean, that he didn't believe, apparently. Exactly, Your Honor. Here we don't know exactly what the facts are because the immigration judge found that both Mr. Yang and Ms. Yao were not credible witnesses, Your Honor. But in response to your earlier question, Ms. Yao did testify that she was unconscious after she fell down at the hospital during that 2006 abortion and that when she regained consciousness, she realized that she had had an abortion. There was some inconsistent testimony whether or not a doctor informed her of that as well, but she said that she was able to decipher that from the fact of her 2002 earlier abortion. She already had one, so she knew she had one this time. According to her story, Your Honor. Yes. And the judge didn't believe her. That's correct, Your Honor. And that's for numerous reasons. First and foremost was the demeanor of Ms. Yao. The immigration judge noted that she became increasingly uncomfortable while she was answering questions, that her responsiveness diminished, and she by herself acknowledged that she had memorization problems and that sometimes her mind went totally blank, Your Honor. But I think what's important that Your Honor pointed out earlier is that this case is actually focusing on whether or not Mr. Yang has a well-founded fear of future persecution in China, Your Honor. And here, Mr. Yang acknowledged that the central reason he fears returning to China is the threat of forced sterilization by family planning officials from his former employer. And he further acknowledged that purported visits by these family planning officials were a crucial part of his asylum claim. Mr. Yang failed, however, to testify consistently whether he in fact encountered these family planning officials or managed to avoid them, and he omitted any mention of these purported visits from his original 2008 statement. Well, is fear of sterilization a valid reason to get asylum? Well, Your Honor, if it was in fact well-founded fear, it could be. But here, given his lack of credibility, we simply don't know what the facts are, Your Honor. I don't know how you find them out without them telling you. Exactly, Your Honor. And here what we have is we have Mr. Yang's testimony, which lacked credibility, and he did not offer any other corroborating evidence in support of his claim that would independently establish his claim for asylum. Counsel, in general, do we know that the family planning thing refers to sterilization rather than abortion very often? There is record evidence, Your Honor, with regard to sterilization. There is some evidence in the country conditions report that some provinces do take more aggressive means of enforcing or had taken more aggressive means in enforcing China's one-child policy, Your Honor. I notice this is a different province than we normally see. Does that make any difference in this case? I don't think so, Your Honor, here, given the adverse credibility findings with respect to both Mr. Yang and Ms. Yao, Your Honor. Well, it sounds like they were monitoring. If you believe him, apparently they did monitor him pretty closely, going back and forth, finding out. This is not the same. This is, I don't remember the name of the province, but it's sort of out in the sticks somewhere. I don't really know. Well, Your Honor, here, again, Mr. Yang's testimony varied with regard to what exactly the family planning officials were doing. Mr. Yang initially testified that he was afraid to go home and that he was, therefore, staying at friends' and family's houses and that there was no indication in his initial testimony or his original 2008 written statement that he, in fact, encountered these family planning officials. He then changed his story to indicate that on certain occasions he did go home for a day or half a day and that during these occasions he did encounter the family planning officials, but he was able to convince them not to forcibly sterilize him  Well, the story as they tell it, discombobulated or disconnected or whatever, is really bad. It's just that the judge didn't believe them. That's correct, Your Honor. And, again, under the REAL ID Act, the adverse credibility finding is entitled to a highly deferential standard review, Your Honor. Now they're both over here somewhere, over here, I don't know where. Yes, Your Honor. Are they in Wisconsin? I'm not sure, Your Honor, but they are both in the United States. Mr. Yang testified that Ms. Yao has also come to the United States under a visa, but that she has not independently filed a claim for asylum, Your Honor. So they're not trying to throw her out yet? I'm sorry, Your Honor? They're not? She's not? Not that I'm aware of, Your Honor. How do you get on the list and investigation of whether or not she gets to stay here or whether they're going to keep her? I'm not aware that she's currently in removal proceedings, Your Honor. And in that regard, for Chinese in general, are they deporting people? Yes, Your Honor. If this Court were to deny the petition for review, Mr. Yang would be subject to a removal order and he would be subject to a removal order. I saw that subject stuff. Are they removing them? As far as I know, Your Honor, yes. Okay. Well, I only hear rumors because nobody ever seems to be clear about when Chinese because you've got to go to the consulate to get some kind of a visa to send them back. Yes, Your Honor. Last I heard, they don't give them out. And if you'd like me to find out additional information in terms of this particular case, Your Honor? I guess that's all I can ask. This probably wouldn't be part of the record, but I really am curious about what is going on with people from China being deported and sent back, or are they just here? Understood, Your Honor. As far as I know, he would be presumably. I know all that subject, too. Yeah, there's no question about that. Yes, Your Honor. And I don't know what they're going to do with her, but you don't know either. That's correct, Your Honor. All we know for the record is they don't believe her. That's correct, Your Honor. If the Court has no further questions, we ask that the Court deny the petition for review. Thank you. Thank you. Counsel? How much time? One minute. Your Honors, as a statement issue, he told the asylum officer what had happened to him and that he was being approached by the sterilization authorities. He amended his application based on his testimony with the asylum office. He's allowed to do that for court, and no one ever challenged him in court. This is during cross-examination where the TA asked him about the asylum office, and he said, yes, I told the asylum officer these individuals are looking for me. So he just amended his application. There's no inconsistency between the two statements because he's allowed to amend his application for court. As to the other issues, most of the statements that he said, Judge, were credible, and we would ask that the Court find that he was credible and remand it to the Court for further fact-finding on the asylum issue. Thank you. Thank you. Thanks to both counsel. This will be taken under advisement.